UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM G SALVADOR,<br><br>        Plaintiff,<br><br>    v.<br><br>LIVE AT HOME CARE CONNECTION, INC., et al.,<br><br>        Defendants. | Case No. 18-cv-07159-EJD<br><br>**ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT; JUDGMENT**<br><br>Re: Dkt. No. 70 |

Plaintiff William G. Salvador, a citizen of Canada, initiated this suit against Defendant Mylah G. Spears ("Spears") and her home care businesses, Defendants Live At Home Care Connection, Inc. ("LAHCC") and Care Connection Transport, Inc. ("CCT"), asserting two claims of wrongful conversion. Pending before the Court is Plaintiff's motion for default judgment against all Defendants. For the reasons set forth below, the Court will grant in part Plaintiff's motion for default judgment.

## I. BACKGROUND

### A. Allegations in the First Amended Complaint

Defendant LAHCC is a home care business. First Amended Complaint ("FAC") ¶ 14. Spears owns 80 shares of stock in LAHCC, which amounts to forty (40) percent of the total number of shares issued and outstanding. *Id.* ¶ 8. Defendant CCT is a handicapped transportation business. *Id.* ¶ 21. Spears owns 60 shares of stock in CCT, which amounts to thirty (30) percent of the total number of shares issued and outstanding. *Id.* ¶ 9. The Defendant corporations are allegedly the alter egos of Spears. *Id.* ¶ 10.

Case No.: 18-cv-07159-EJD

1    In 2016, Spears induced Plaintiff to invest in LAHCC and CCT. *Id.* ¶¶ 14, 21. Plaintiff
2 invested $5,000 in LAHCC for a thirty (30) percent stock ownership interest. *Id.* Plaintiff also
3 loaned $10,000 to LAHCC. *Id.* Plaintiff invested $1,500 in CCT for a fifty (50) percent stock
4 ownership interest. *Id.* ¶ 21. Plaintiff also loaned CCT $11,000 for the purchase of a handicapped
5 accessible van, licensing, rent and insurance expenses. *Id.*

6    On or about April 30, 2017, Spears withdrew $14,000 from LAHCC for her personal use.
7 *Id.* ¶ 15. Spears also withdrew $47,000 from CCT and converted the van for her personal use. *Id.*
8 ¶¶ 22-23. As a result, Plaintiff has been deprived of his investment and repayment of the loans.
9 *Id.* ¶¶ 16, 24. Plaintiff made demands for an accounting, but has not received replies. *Id.* ¶¶ 17,
10 25. Based on the foregoing, Plaintiff asserts two claims for conversion against Defendants.
11 Plaintiff seeks general damages in the sum of $200,000, punitive damages, and costs of the suit.

12 **B.    Procedural History**

13    Plaintiff initiated suit in November of 2018. Dkt. No. 1. Summons were returned
14 executed in June of 2019. Dkt. Nos. 29-31. Thereafter, Spears moved to dismiss the original
15 complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt.
16 No. 35. The Court granted the motion in part with leave to amend. Dkt. No. 48. Plaintiff filed the
17 FAC of March 6, 2020. Dkt. No. 49. Spears filed an unsigned answer on March 20, 2020 in
18 response to the FAC. Dkt. No. 50. It is unclear whether this answer was intended to be filed on
19 behalf of all Defendants.

20    An initial case management conference was scheduled for June 11, 2020, but Spears did
21 not appear despite the Court attempting to contact her. Dkt. No. 56. The conference was
22 continued three more times until February 8, 2021 due to Spears's failure to respond to any
23 communications from Plaintiff or the Court. Dkt. Nos. 56, 58, 60. On December 8, 2020,
24 Plaintiff filed a motion to strike answer and for entry of default. Dkt. No. 61. The Court granted
25 the motion to strike the answer, directed the Clerk of Court to enter default as to all Defendants,
26 and set a briefing schedule and hearing date for Plaintiff's motion for default judgment. Dkt. No.
27 65. The Court concluded that entry of default was appropriate because Defendants had repeatedly
28 Case No.: 18-cv-07159-EJD

2

1   failed to file a case management statement and failed to appear at a case management conference.
2   Further, the Court noted that the corporate Defendants had not appeared through counsel, as
3   required by Civil Local Rule 3-9(b). The Clerk of the Court entered default against all Defendants
4   on February 16, 2021. Dkt. No. 66. The instant motion followed.

## II. LEGAL STANDARD

Following entry of default, the Court may enter a default judgment upon request. Federal Rule of Civil Procedure 55(b)(2). The Court's decision to enter default judgment is "discretionary." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In assessing a request for default judgment, the Court has an "affirmative duty" to examine its jurisdiction over "both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Upon confirming that jurisdictional requirements have been met, the court must weigh the following factors to determine whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the underlying default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). When default has been entered, the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

## III. DISCUSSION

### A. Jurisdiction

Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(4) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship. Plaintiff is a citizen of Canada and a resident of the city of Calgary, province of Alberta. FAC ¶ 1. The corporate Defendants, LAHCC and CCT, were incorporated in the state of California, with their principal place of business in San Jose, California. Therefore, they are citizens of California. *See Boren Found. v. HHH Inv. Tr.*, 295 F. App'x 151, 152 (9th Cir. 2008) (a corporation is deemed a citizen

Case No.: 18-cv-07159-EJD

3

of any state of incorporation and of the state where it has its principal place of business). Spears is a citizen of California. *See generally* Answer to FAC, Dkt. No. 50. In addition, Spears is subject to personal jurisdiction because she is a citizen of California and was served in California. *ACS Recovery Servs., Inc. v. Kaplan*, No. C 09-01304 JSW, 2010 WL 144816, at 4 (N.D. Cal. Jan. 11, 2010) (citing *Milliken v. Meyer*, 311 U.S. 457 at 462–63 (1940)).

### B. Eitel Factors

#### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether Plaintiff would be prejudiced if default is not granted. *See PepsiCo, Inc. v. Cal. Security Cans*, 283 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). A plaintiff is prejudiced if the plaintiff would be "without other recourse for recovery" because the defendant failed to appear or defend against the suit. *Bd. of Trustees, I.B.E.W. Loc. 332 Pension Plan Part A v. Delucchi Elec., Inc.*, No. 19-CV-06456 EJD, 2020 WL 2838801, at *2 (N.D. Cal. June 1, 2020).

Here, although Spears filed an unsigned answer in response to the FAC, Defendants have otherwise failed to appear in this matter. Dkt. 65 at 1-2. Unless default judgment is granted, Plaintiff will be left without recourse. *See Johnson v. Monterey & Rancho Plaza*, No. 18-CV-05718 BLF, 2020 WL 4368194, at *2 (N.D. Cal. July 30, 2020), *judgment entered*, No. 18-CV-05718 BLF, 2020 WL 5893319 (N.D. Cal. Oct. 5, 2020); *see also Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners*, No. 13-CV-00848 JCS, 2014 WL 5281039, at *6 (N.D. Cal. Jan. 21, 2014) (citations omitted) ("Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor"). Accordingly, the first *Eitel* factor weighs in favor of the entry of default judgment.

#### 2. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

Courts often consider the second and third *Eitel* factors together. *Bd. of Trustees, I.B.E.W. Loc. 332 Pension Plan Part A*, 2020 WL 2838801, at *2. These factors assess the substantive merit of the movant's claims and the sufficiency of the pleadings.

Case No.: 18-cv-07159-EJD

4

1	Plaintiff seeks relief for Spears's improper conversion from (1) LAHCC and (2) CCT.  For
2	the claims to be meritorious, the movant must "state a claim on which [it] may recover.  *Id*.  The
3	elements of a conversion claim under California law are as follows: (1) the plaintiff's ownership or
4	right to possession of the property at the time of the conversion; (2) the defendant's conversion by
5	a wrongful act or disposition of property rights; and (3) damages.  *Mindys Cosmetics, Inc. v.*
6	*Dakar*, 611 F.3d 590, 601 (9th Cir. 2010).

7	Upon review of the FAC, the Court concludes that Plaintiff has pled sufficient facts to state a
8	claim for conversion.  Plaintiff alleges that he invested $5,000 in LAHCC and $1,5000 in CCT.
9	FAC ¶¶ 14, 21.  Plaintiff and Spears established a joint back account in the name of LAHCC for
10	business purposes.  *Id.* ¶ 14.  Plaintiff alleges that Spears withdrew $14,000.00 on or around April
11	30, 2017 and another $47,000 on an unspecified date from the LAHCC bank account for her
12	personal use.[1]  *Id.* ¶¶ 15, 22-23.  Plaintiff also alleges that Spears converted a van—partially paid
13	for by Plaintiff and meant for official use by LAHCC and CCT—for her own exclusive use.  *Id.* ¶¶
14	23-24.  Finally, Plaintiff alleges that Spears dissolved LAHCC and CCT without consulting him
15	despite the terms of the Partnership Agreement requiring a unanimous vote by all shareholders.
16	Decl. of William Salvador, Dkt. 67-1 ¶ 6.  When Plaintiff made a demand for accounting in 2018,
17	Spears did not respond.  FAC ¶ 25.  "[W]here a person entitled to possession" of property
18	"demands it, the wrongful, unjustified withholding is actionable as conversion." *CRS Recovery,*
19	*Inc. v. Laxton*, No. C-06-7093 CW, 2013 WL 140084, at *9 (N.D. Cal. Jan. 10, 2013).  Because
20	Spears took Plaintiff's money for her personal use and did not return it when asked, Spears and
21	Defendants are liable for conversion.  The second and third *Eitel* factors weigh in favor of
22	granting default judgment.

### 3.     The Sum of Money at Stake in the Action

24	The fourth *Eitel* factor requires the Court to consider whether the amount of money at stake

---

[1] To be clear, Plaintiff is not asking for these sums as damages. Plaintiff suggests that after Spears made these withdrawals, the balance of the joint account was less than what Plaintiff was owed. He is asking to collect the money he had lent to the businesses before they were dissolved.
Case No.: 18-cv-07159-EJD
5

is appropriate in comparison to the seriousness of the defendant's conduct. *Pepsico, Inc.*, 238 F. Supp. 2d at 1176. However, "where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Core Concrete Constr., Inc.*, No. C-11-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012); *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2 (N.D. Cal. June 20, 2011) (finding that the sum of money for unpaid contributions, liquidated damages, and attorneys' fees was appropriate because it was supported by adequate evidence provided by the plaintiffs). Here, Plaintiff seeks compensatory damages in the amount of $183,186. Dkt. 67 at 7. Given the substantial amount of money at stake, the fourth *Eitel* factor could weigh against the entry of default judgment unless it is tailored to the specific misconduct of the Defendants. *Id*. For the reasons discussed below in subsection "C" of this Order, the Court declines to enter judgment in the amount requested because the requested amount has not been satisfactorily tailored to the specific misconduct of Defendants. Therefore, this factor does not weigh against granting default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. *Eitel*, 782 F.2d at 1471–72. Although an answer was filed, it was ultimately stricken due to Defendants' failure to participate in this action. Dkt. 65. Thus, all well-plead allegations in Plaintiff's Complaint are accepted as true, and therefore there is little possibility of dispute concerning material facts. *Marquez v. NLP Janitorial, Inc.*, No. 16-CV-06089 BLF, 2019 WL 652866, at *4 (N.D. Cal. Feb. 15, 2019) (holding that there was little possibility of dispute because even though defendant had filed an answer, defendant had ceased communication about settlement with the plaintiff and failed to appear at pre-trial hearings). Thus, this factor also favors granting default judgment.

### 5. Possibility That Underlying Default Was Due to Excusable Neglect

The sixth *Eitel* factor examines whether Defendants' failure to respond to Plaintiff's

Case No.: 18-cv-07159-EJD

allegations was the result of excusable neglect. *Eitel*, 782 F.2d at 1471–72. There is nothing in the record to suggest Defendants' failure to appear and litigate this matter is based on excusable neglect. Therefore, the sixth *Eitel* factor also weighs in favor of granting default judgment.

### 6. Policy Favoring a Decision on the Merits

The final *Eitel* factor considers the preference for deciding cases on the merits. *Id.* at 1471-72. "However, this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered." *Warner Bros. Ent. Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004). While public policy favors deciding each case on the merits, a defendant's "refusal to participate meaningfully in [the] litigation renders that impossible." *Garvin v. Tran*, No. C-07-01571 HRL, 2011 WL 5573995, at *2 (N.D. Cal. Nov. 16, 2011). Here, Spears has seemingly abandoned the action, having failed to plead, oppose, or otherwise defend in over a year. The seventh *Eitel* factor weighs in favor of the Court granting default judgment. Taking all seven *Eitel* factors into consideration, the Court finds it appropriate to grant default judgment against Defendants.

### C. Damages

After liability is established, the plaintiff seeking default judgment must establish that the requested relief is appropriate. *Bay Area Painters v. Alta Specialty*, No. C-06-06996 MJJ, 2008 WL 114931, at *3 (N.D. Cal. Jan. 10, 2008) (citing *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)). Where the amount of damages "is liquid or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits, the Court may enter default judgment without a hearing on damages." *United States v. Sundberg*, No. C-09-4085 EMC, 2011 WL 3667458, at *6 (N.D. Cal. Aug. 22, 2011).

As a threshold matter, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against her so that she may make a calculated decision as to whether or not it is in her best interest to answer. *In re Ferrell*, 539 F.3d

Case No.: 18-cv-07159-EJD

1186, 1192–93 (9th Cir. 2008) (rejecting requests for damages and fees because the prayer for relief lacked the "requisite specificity to put defendants on notice that the [plaintiff] sought attorneys' fees and costs on the default judgment"). In his FAC, Plaintiff seeks the following relief: (1) general damages in the sum of $200,000, (2) punitive damages, (3) costs of suit herein incurred; and (4) other and further relief as the court may deem proper. FAC ¶ 28.

### 1. **General Damages**

Under California Civil Code § 3336 (West 1970), the measure of damages for conversion is "either (1) the value of the property at the time of conversion, or (2) an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of." *Myers v. Stephens*, 233 Cal. App. 2d 104, 116, 43 Cal. Rptr. 420, 430 (1965) (citations omitted). Although § 3336 provides for alternative measures of recovery for conversion, the value of the property at the time of conversion, with interest, is generally considered to be the appropriate measure of damages. *Id.* "The determination of damages under the alternative provision is resorted to only where the determination on the basis of value at the time of conversion would be manifestly unjust." *Id.* "A plaintiff seeking recovery under the alternative provision of the statute must . . . plead and prove the existence of special circumstances which require a different measure of damages to be applied." *Ox Labs, Inc. v. Bitpay, Inc.*, No. 18-CV-5934 MWF (KSX), 2020 WL 1039012, at *9 (C.D. Cal. Jan. 24, 2020), *aff'd*, 848 F. App'x 795 (9th Cir. 2021), (citing *Krueger*, 145 Cal. App. 3d 204, 215, 193 Cal. Rptr. 322, 322 (Ct. App. 1983) (internal quotation marks and citation omitted)). Here, Plaintiff has not pled or proven the existence of special circumstances. Accordingly, the Court will assess damages based on the value of the property converted at the time and place of conversion with interest from that time.

For purpose of clarity, the Court has created the following table to compare the type and amount of damages Plaintiff requested in the FAC and in his application for default judgment and to indicate the Court's rulings:

Case No.: 18-cv-07159-EJD

8

## SUMMARY OF DAMAGES

| Description of Damages | Amount Requested in FAC | Amount Requested in Application for Default Judgment | Court's Ruling |
|---|---|---|---|
| Stock ownership interest in LAHCC | $5,000 | (same as FAC) | **$5,000** |
| Stock ownership in CCT | $1,500 | (same as FAC) | **$1,500** |
| Money lent to LAHCC for licensing, rent, and insurance expenses | $10,000 | $9,483.65[2] | **$9,483.65** |
| Money lent to CCT for the purchase of a handicapped accessible van, licensing, rent, and insurance expenses | $11,000 | $45,224.96[3] | **$9,949.96** |
| Goodwill of LAHCC | $100,000 | Not included | disallowed |
| Goodwill of CCT | $75,000 | Not included | disallowed |
| Postage and supplies | Not included in FAC | $32.47 | disallowed |
| Utilities paid in cash | Not included in FAC | $750 | disallowed |
| Plane ticket – 11/2015 | Not included in FAC | $393.88 | disallowed |
| Plane ticket – 2/2016 | Not included in FAC | $271.51 | disallowed |
| Plane ticket – 9/2016 | Not included in FAC | $475.70 | disallowed |
| Plane ticket – 1/2017 | Not included in FAC | $292.78 | disallowed |
| Car rental | Not included in FAC | $134.85 | disallowed |
| Accommodation | Not included in FAC | $93.13 | disallowed |
| Time Spent Working and Lost Income | Not included in FAC | $119,532.80[4] | disallowed |

FAC ¶¶ 14, 18, 21, 26; Dkt. 67, Ex. 6 at 1-2.

First, in the FAC, Plaintiff alleged he lent $11,000 to CCT, (FAC ¶ 22), whereas in the default judgment Plaintiff claims he lent $45,224.96 to CCT. Pursuant to Rule 54(c), "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Therefore, Plaintiff is only entitled to a maximum of $11,000 for money lent to CCT for the down

---

[2] Plaintiff transferred funds to LACHH on: April 4, 2016 ($1,833.65); July 6, 2016 ($1,000); August 5, 2016 ($3,500); August 9, 2016 ($450); October 11, 2016 ($200); October 18, 2016 ($450); October 26, 2016 ($100); November 7, 2016 ($450); and November 21, 2016 ($1,500).

[3] Plaintiff contends he lent the following sums to CCT, expecting repayment: deposit to open bank account ($100), down payment for new van ($8,000), loaned amount of the van purchase price ($34,175), cash deposit for overdraft fees ($1,00), business insurance ($779.96), business license application fee ($570), February 2017 rent ($600).

[4] Plaintiff contends he is entitled to compensation for the time he spent working in November of 2015 ($972.80); February of 2016 ($6,323.20); and September of 2016 ($1,459.20). Plaintiff also contends he lost income in 2016-2017 ($104,089.60); in June of 2018 ($1,216); in August of 2018 ($5,472).

Case No.: 18-cv-07159-EJD

1    payment of a handicapped accessible van, licensing, rent, and insurance expenses. Fed. R. Civ. P.
2    Rule 54(c); FAC ¶ 22. Based on the evidence Plaintiff provided to substantiate the allegations
3    related to CCT, he is entitled to $9,949.96.
4          Second, the FAC makes no mention of miscellaneous business expenses, and therefore
5    Plaintiff may not recover $2,444.32 for postage, utilities, and travel expenses. *Id.*; *In re Ferrell*,
6    539 F.3d at 1192–93. Third, the FAC also does indicate that Plaintiff intends to seek damages for
7    time spent working and lost income. Accordingly, Plaintiff is not entitled to the $119,532.80 for
8    time spent working and lost income. *Id*.
9          Plaintiff requested damages for lost good will in the FAC, but it would be improper to
10   award good will damages in this case. The "good will" of a business is the expectation of
11   continued public patronage. *Carrey v. Boyes Hot Springs Resort, Inc.*, 245 Cal. App. 2d 618, 623,
12   54 Cal. Rptr. 199, 202 (Ct. App. 1966) (holding that damages for a loss of good will was
13   appropriate because respondents' business had been in business for many years, developed over
14   200 customers, and appellants' wrongful conduct destroyed the good will). Here, there is no
15   evidence to suggest LAHCC or CCT had any customers before their dissolution, or that customers
16   would continue to utilize LAHCC or CCT if not for Defendant's wrongful conduct. Therefore,
17   there can be no award based on a presumption of continued public patronage. Because Plaintiff
18   did not substantiate his claim of good will in his application for default judgment, he is not entitled
19   to the requested damages from the FAC ($100,000 good will of LAHCC and $75,000 good will of
20   CCT). FAC ¶¶ 18, 26. Plaintiff also has not provided any evidence that LAHCC or CCT were
21   profitable before the companies were dissolved, so an award of lost income is not appropriate
22   either. *Carrey*, 245 Cal. App. 2d at 619, 54 Cal. Rptr. at 200. Therefore, Plaintiff is not entitled to
23   the $119,532.80 requested in the application for default or the $175,000 in good will damages
24   requested in the FAC.
25         At default, Plaintiff is entitled to damages that can be proven through testimony or written
26   affidavit. *Bd. of Trs. of the Laborers Health & Welfare Trust Fund for N. Cal. v. A & B Bldg.*
27   *Maint. Co. Inc.*, No. C-13-00731 WHA, 2013 WL 5693728, at *4 (N.D. Cal. Oct. 17, 2013).
28   Case No.: 18-cv-07159-EJD

Plaintiff has been able to prove up the following amounts of damages through affidavits included in his application for default: (1) $5,000 stock ownership interest in LAHCC, (2) $1,500 stock ownership interest in CCT, (3) $9,483.65 lent to LAHCC for licensing, rent, and insurance expenses, and (4) $9,949.96 lent to CCT for the purchase of a handicapped accessible van, licensing, rent, and insurance expenses. Dkt. 67, Ex. 6. Thus, Plaintiff is awarded $25,933.61 in general damages.

### 2. Punitive Damages

Pursuant to California Civil Code § 3294, "punitive damages may be awarded where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." Cal. Civ. Code § 3294 (West, through Ch. 83 of 2021 Reg. Sess.). Section 3294 defines "oppression, fraud, or malice" as follows:

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

*Id.* Cal. Civ. Code § 3294(c). Within this framework, district courts have discretion in determining an appropriate punitive damages award on default judgment. *Ferriss v. All. Publ'g, Inc.*, No. 15-CV-05675 EMC, 2016 WL 7116110, at *12 (N.D. Cal. Dec. 6, 2016); *see also*, Fed. R. Civ. P. 55(b)(1).

Here, Plaintiff alleges in his FAC that Spears's conduct was "willful, wanton, malicious, and oppressive, were taken with the intent to defraud, and justify the awarding of exemplary and punitive damages." FAC ¶ 27. These allegations are nothing more than a recitation of language from California Civil Code § 3294 and lack any factual support. Therefore, the Court does not accept them as true. *See J & J Sports Prods., Inc. v. Munoz*, No. C-12-05780 WHA, 2013 WL 1209944, at *3 (N.D. Cal. Mar. 25, 2013) (allegations that "parrot the language" of a particular

Case No.: 18-cv-07159-EJD

claim's elements are not well-pleaded facts that a court must take as true when reviewing a default judgment.). Because Plaintiff has not satisfied his burden of proof, the Court declines to award punitive damages.

### 3.    Costs of the Suit

Under Civil Local Rule 54–3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred." Because Plaintiff requested the costs of the suit in his pleadings, and actually incurred these costs, Plaintiff's costs are allowable. *See Gucci Am. v. Wang Huoqing*, No. C-09-05969 CRB, 2011 WL 30972, at *2 (N.D. Cal. Jan. 5, 2011) ($750 in filing and service of process fees deemed reasonable and awarded in full). Therefore, Plaintiff's costs of $400 in filing fees and $450 for service, totaling $850, are awarded in full.

## IV.    JUDGMENT

Based on the foregoing, Plaintiff's application for default judgment is GRANTED IN PART. Plaintiff is awarded $25,933.61 in general damages plus $850.00 in costs for a total of $26,783.61. Judgment is entered accordingly.

**IT IS SO ORDERED.**

Dated: August 3, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 18-cv-07159-EJD